# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

CAPITAL EQUIPMENT SOLUTIONS, LLC,
a Michigan limited liability company,

    Plaintiff,

v.                                                                                                  Case No.:

FARM PROPERTIES, L.L.C.,
29350 Horsey Road
Oak Hall, VA 23416

EASTERN SHORE GRAIN, INCORPORATED,
29350 Horsey Road
Oak Hall, VA 23416

HOLDEN'S CREEK FARM, LLC,
29350 Horsey Road
Oak Hall, VA 23416

BENNY F. HALL & SONS LLC,
29350 Horsey Road
Oak Hall, VA 23416

BENNY F. HALL & SONS PRODUCE COMPANY,
29350 Horsey Road
Oak Hall, VA 23416

BENNY F. HALL, SR.,
8013 Long Lane
Temperanceville, VA 23442

and

KAREN W. HALL,
8013 Long Lane
Temperanceville, VA 23442

    Defendants.
_____/

**COMPLAINT**

Plaintiff, Capital Equipment Solutions, LLC ("CES"), files this Complaint against Defendants Farm Properties, L.L.C. ("Farm Properties"); and Eastern Shore Grain, Incorporated ("Eastern Shore"), Holden's Creek Farm, LLC ("Holden's Creek"), Benny F. Hall & Sons LLC ("Hall & Sons LLC"), Benny F. Hall & Sons Produce Company ("Hall & Sons Company"), Benny F. Hall, Sr. ("Benny Hall"), and Karen W. Hall ("Karen Hall", and collectively with Eastern Shore, Holden's Creek, Hall & Sons, LLC, Hall & Sons Company and Benny Hall, the "Guarantors"), and states as follows:

## NATURE OF THE ACTION

This is a suit by a creditor against its borrower and guarantors for their uncontested failure to repay amounts due under the loan and for their other breaches even after entering into a forbearance agreement.

## PARTIES

1. Plaintiff CES is a Michigan limited liability company with its principal place of business located in Troy, Michigan.

2. Defendant Farm Properties is a Virginia limited liability company with its principal place of business at 29350 Horsey Road, Oak Hall, Virginia 23416.

3. Defendant Eastern Shore is a Virginia corporation with its principal address located at 29350 Horsey Road, Oak Hall, Virginia 23416.

4. Defendant Holden's Creek is a Virginia limited liability company with its principal place of business located at 29350 Horsey Road, Oak Hall, Virginia 23416.

5. Defendant Hall & Sons LLC is a Virginia limited liability company with its principal place of business located at 29350 Horsey Road, Oak Hall, Virginia 23416.

6. Defendant Hall & Sons Company is a Virginia corporation with its principal place of business located at 29350 Horsey Road, Oak Hall, Virginia 23416.

7. Defendant Benny Hall is an individual who resides at 8013 Long Lane, Temperanceville, Virginia 23442.

8. Defendant Karen Hall is an individual who resides at 8013 Long Lane, Temperanceville, Virginia 23442.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the requirements of complete diversity among the parties is satisfied. The action is between citizens of different states, as Plaintiff is a Michigan company and all Defendants are citizens of Virginia. The amount in controversy exceeds $75,000.00 exclusive of interest, costs and attorneys' fees.

10. Defendants have done, and continue to do, business in the State of Virginia, so that this Court has both general and specific personal jurisdiction over them pursuant to both statutory and Constitutional law.

11. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

### The Loan Documents

12. On or about February 1, 2017, Farm Properties entered into a loan relationship with Loeb Term Solutions, LLC ("Loeb"). The purpose of the loan was to finance certain equipment.

13. Specifically, on or about February 1, 2017, Farm Properties executed and delivered to Loeb a Term Promissory Note in the principal amount of $1,300,000 (the "Term Note") and a Security Agreement (the "Security Agreement"). True and correct copies of the Term Note and Security Agreement are attached hereto as **Exhibit A.**

14. Pursuant to the Term Note, Loeb agreed to loan $1,300,000 to Farm Properties and Farm Properties agreed to make payments of principal and interest as follows: A payment of principal in the amount of $7,817.59 at closing and thereafter two hundred and six (206) consecutive weekly installments of principal and interest in the amount of $7,817.59 each commencing February 8, 2017 and continuing on each Wednesday thereafter through and including January 13, 2021, with the final installment of the outstanding balance of all principal and accrued interest and all other amounts due to be due and payable on January 20, 2021.

15. CES has performed all conditions, covenants, and promises required by it on its part to be performed in accordance with the terms and conditions of the Term Note and Security Agreement.

16. Pursuant to the Security Agreement, CES was granted a security interest in the following "Collateral", whether now owned or hereafter acquired or arising:

> All Inventory (including returned and repossessed items), wherever located; all Equipment (including fixtures and titled motor vehicles), wherever located, including, without limitation, the equipment described on Exhibit A attached [to the Security Agreement]; all Accounts, Chattel Paper, General Intangibles (including, intellectual property rights and payment intangibles), Letter of Credit Rights, Negotiable Instruments, Supporting Obligations, Investment Property, Documents and Instruments; all obligations which give rise to, evidence or relate to any right of Debtor to the payment of money or other forms of consideration of any kind or for any reason (whether classified under the Michigan UCC as Accounts, Chattel Paper, General Intangibles, or otherwise), including, without limitation, accounts receivable, letters of credit and the right to receive payment thereunder, tax refunds, insurance or condemnation proceeds, notes, drafts, or other instruments, documents, rights to payment under any guaranty, indemnity, security agreement, mortgage or lien in favor of Debtor, and all other debts, obligations and

      liabilities in whatever form now or hereafter owing to Debtor from any person or entity, and all proceeds of any of the foregoing (collectively, "Receivables"); all rights of Debtor arising under any now existing or hereafter entered into agreement, lease, license, or other contractual arrangement between Debtor and any other person or entity (collectively, "Contract Rights"); all Securities (as defined in Article 8 of the Michigan UCC in effect on the date hereof) of Debtor, whether certificated or uncertificated, whether equity, debt or otherwise and whether or not publicly traded; all bank accounts and brokerage accounts of Debtor, including without limitation, deposit accounts, together with all cash, cash equivalents, notes, bonds, treasury bills and certificates of deposit deposited or on account therein; all actions, causes of action and other claims of Debtor whether now existing or hereafter arising; all books and records relating to any of the foregoing; and all proceeds, replacements and products of, and addition and accessions to, any and all of the foregoing property, and, to the extent not otherwise included, all proceeds of condemnation, casualty or other types of insurance (whether or not [Loeb] is the loss payee thereof), or any indemnity, warranty or guaranty, payable by reason of condemnation, loss or damage to or otherwise with respect to any of said property (collectively, "Proceeds"). The Collateral shall also include patents, trademarks, trade names and trade processes used by Debtor and the goodwill of any business conducted by Debtor.

(Security Agreement, Exhibit A).

## Guarantors

17.    To induce Loeb to enter into the Term Note and Security Agreement, on or about February 1, 2017, Benny Hall executed and delivered to Loeb a Personal Guaranty (the "Benny Hall Guaranty"), pursuant to which he absolutely and unconditionally guaranteed to Loeb the Indebtedness of Farm Properties, including, but not limited to, those under the Term Note and Security Agreement. The Guaranty provided that the Guarantor determined executing the Guaranty to be in his interest and to his financial benefit. A true and correct copy of the Benny Hall Guaranty is attached hereto as **Exhibit B**.

18.    To induce Loeb to enter into the Term Note and Security Agreement, on or about February 1, 2017, Karen Hall executed and delivered to Loeb a Personal Guaranty (the "Karen Hall Guaranty"), pursuant to which she absolutely and unconditionally guaranteed to Loeb the Indebtedness of Farm Properties, including, but not limited to, those under the Term Note and

Security Agreement.  The Guaranty provided that the Guarantor determined executing the Guaranty to be in her interest and to her financial benefit.  A true and correct copy of the Karen Hall Guaranty is attached hereto as **Exhibit C**.

19. To induce Loeb to enter into the Term Note and Security Agreement, on or about February 1, 2017, Eastern Shore executed and delivered to Loeb a Corporate Guaranty and related Security Agreement and UCC financing statements (collectively the "Eastern Shore Guaranty"), pursuant to which it absolutely and unconditionally guaranteed, among other things, the Indebtedness of Farm Properties under the Term Note and Security Agreement.  The Guaranty provided that the Guarantor determined executing the Guaranty to be in its interest and to its financial benefit.  A true and correct copy of the Eastern Shore Guaranty is attached hereto as **Exhibit D**.

20. To induce Loeb to enter into the Term Note and Security Agreement, on or about February 1, 2017, Holden's Creek executed and delivered to Loeb a Corporate Guaranty and related Security Agreement and UCC financing statements (collectively the "Holden's Creek Guaranty"), pursuant to which it guaranteed absolutely and unconditionally, among other things, the Indebtedness of Farm Properties under the Term Note and Security Agreement.  The Guaranty provided that the Guarantor determined executing the Guaranty to be in its interest and to its financial benefit.  A true and correct copy of the Holden's Creek Guaranty is attached hereto as **Exhibit E**.

21. To induce Loeb to enter into the Term Note and Security Agreement, on or about February 1, 2017, Hall & Sons LLC executed and delivered to Loeb a Corporate Guaranty and related Security Agreement and UCC financing statements (collectively the "Hall & Sons LLC Guaranty"), pursuant to which it guaranteed absolutely and unconditionally, among other things,

the Indebtedness of Farm Properties under the Term Note and Security Agreement. The Guaranty provided that the Guarantor determined executing the Guaranty to be in its interest and to its financial benefit. A copy of the Hall & Sons LLC Guaranty is attached hereto as **Exhibit F**.

22. To induce Loeb to enter into the Term Note and Security Agreement, on or about February 1, 2017, Hall & Sons Company executed and delivered to Loeb a Corporate Guaranty and related Security Agreement and UCC financing statements (collectively the "Hall & Sons Company Guaranty"), pursuant to which it guaranteed absolutely and unconditionally, among other things, the Indebtedness of Farm Properties under the Term Note and Security Agreement. The Guaranty provided that the Guarantor determined executing the Guaranty to be in its interest and to its financial benefit. A true and correct copy of the Hall & Sons Company Guaranty is attached hereto as **Exhibit G**.

23. On February 1, 2017, Loeb assigned the Term Note, the Security Agreement, all of the Guarantees and other Documents to CES by way of an Assignment and Consent Agreement (the "Assignment") in which Farm Properties and all Guarantors consented. A true and correct copy of the Assignment is attached hereto as **Exhibit H**.

### Perfection of Security Interest

24. On January 19, 2017, CES perfected its security interest by filing a UCC-1 Financing Statement with the Virginia State Corporation Commission, as File # 170119-3848-5, and assigned to CES on February 2, 2017 as File # 17-02-08-5306-8. True and correct copies of the UCC financing statements are attached hereto as **Exhibit I**.

### The Defendants' Default

25. Farm Properties defaulted under the Term Note and Security Agreement (collectively, with all other documents executed in connection therewith the "Facility Documents") because, among other reasons, it failed to make payments to CES when due, it failed to pay the required personal property taxes in excess of $100,000.00, and it failed to maintain the required GPS equipment on the Collateral.

26. On April 12, 2018, at the request of Farm Properties and the Guarantors, Farm Properties, the Guarantors and CES entered into a Forbearance Agreement (the "Forbearance Agreement"). A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit J**.

27. In the Forbearance Agreement Farm Properties (or "Borrower") and Guarantors each represented to CES that:

    A. Borrower and Guarantors are each in default under the terms of the Facility Documents and the Obligations presently due and payable in full;

    B. Borrower and Guarantor are liable, without offset, counterclaim and/or defense of any kind whatsoever, for the payment of all amounts owing under the Facility and the Facility Documents. As of March 21, 2018, the Obligations were $1,064,448.80, exclusive of expenses and attorney's fees.

    C. The Facility Documents are legal, valid, binding and enforceable against Borrower and Guarantor and Borrower and Guarantor have no counterclaim, claim, offset or defense with respect thereto.

(Forbearance Agreement, Exhibit J).

28. In paragraph 3 of the Forbearance Agreement, CES agreed that so long as the Borrower and Guarantors were in compliance with all of the terms and conditions of this

Forbearance Agreement; did not dismantle or remove any assets from 29350 Horsey Road, Oak Hall, VA 23416 without prior written consent of CES; provided to CES the current GPS login and password information with respect to the Collateral; and were in compliance with all of the terms and conditions of the Facility Documents other than with respect to the Existing Defaults and pays CES on the date thereof all amounts in arrears under the Facility Documents, including any and all applicable late fees and other charges; then CES would forbear from exercising its rights and remedies under the Facility Documents and applicable law until April 26, 2018 (the "Forbearance Period").

29. Paragraph 4 of the Forbearance Agreement provides that on the earlier of (a) the occurrence of an Event of Default, or (b) the expiration of the Forbearance Period, the Borrower and Guarantors will immediately repay all amounts due under the Facility Documents; and immediately, upon demand of Lender, surrender possession of the assets covered by the Facility Documents upon terms and conditions set forth in the Peaceful Possession Agreement attached to the Forbearance Agreement. A true and correct copy of the Peaceful Possession Agreement is attached hereto as **Exhibit K**.

30. In Paragraph 3 of the Peaceful Possession Agreement Borrower and Guarantors acknowledged and agreed that upon the earlier to occur of an Event of Default or the expiration of the Forbearance Period each as defined in the Forbearance Agreement (the "Effective Date"), peaceful possession of the Collateral shall be tendered to CES at the premises located at 29350 Horsey Road, Oak Hall, VA 23416 (the "Premises") pursuant to Sections 9-603 and 9-609 of the Michigan Uniform Commercial Code. It further provides that Borrower shall grant and provide CES unfettered and exclusive access to the Collateral at the Premises on the Effective Date, and all Collateral will be located at the Premises as of the Effective date.

31. As of this date, Farm Properties and Guarantors have failed to cure the Event of Default and the Forbearance Period has expired.

32. Farm Properties has failed to return all Collateral to the Premises and has removed Collateral from the Premises.

33. As of January 7, 2019, the total sum due, and hereby demanded, under the Facility Documents is $811,775.30.  In support thereof, CES attaches as **Exhibit L** an affidavit made by its agent, stating therein to the best of the affiant's belief the amount of the CES's claim, that such amount is justly due, and the time from which CES claims interest.  The sum due will increase by interest and charges payable under the Facility Documents which accrue on the unpaid balance.

34. All conditions precedent to the institution of this action and under all agreements referenced herein have been met, have occurred, or have been waived.

35. Due to the Defendants' default under the Facility Documents and Guaranties, it was necessary for CES to employ its undersigned attorneys and instruct the filing of this action, for which CES will incur costs and expenses, including reasonable attorneys' fees.  Defendants are obligated to pay these fees and expenses pursuant to the Loan Documents and Guaranties, as may be applicable.

## COUNT I
### (DETINUE AGAINST FARM PROPERTIES)

36. CES incorporates paragraphs 1 through 35 of this pleading to Count I as if fully set forth herein.

37. This is an action pursuant to Va. Code § 8.01-114 to recover the Collateral believed to be located in Accomack County, Virginia at the Premises.

38. Pursuant to the Security Agreement, CES was granted a security interest in the Collateral.

39. Farm Properties has defaulted under the Security Agreement.

40. As a result of the defaults under the terms of the Security Agreement, CES is entitled to possession of the Collateral pursuant to the terms and conditions of the Loan Documents, the Peaceful Possession Agreement and Virginia law.

41. Pursuant to the Loan Documents, Farm Properties is obligated to pay all expenses associated with CES's repossession of the Collateral.

42. CES lacks adequate protection of its interest in the Collateral, and the Collateral is depreciating in value with the passage of every day. Farm Properties continues to retain the Collateral, and said Collateral is currently being depreciated and dissipated without payment to CES, and Farm Properties is diverting the Collateral.

43. The Collateral is mobile equipment and can be easily moved. CES is concerned that the Collateral will moved from the Premises because the Defendants have refused to place the required GPS tracking devices on the Collateral and because the Collateral is mobile equipment.

44. Under the Peaceful Possession Agreement, CES is entitled to possession of the Collateral at the Premises.

**WHEREFORE**, CES demands judgment against Defendant Farm Properties for immediate and exclusive possession of the Collateral at the Premises, together with an award of any deficiency damages, expenses of detinue and sale, attorneys' fees and costs, as well as such further and additional relief as this Court may deem just and proper.

## COUNT II
### (BREACH OF CONTRACT AGAINST FARM PROPERTIES)

45. CES incorporates paragraphs 1 through 44 of this pleading to Count II as if fully set forth herein.

46. This is an action to recover for damages incurred resulting from Farm Properties' breach of contract.

47. As set forth more fully above, Farm Properties has defaulted pursuant to the Loan Documents by failing to make principal, interest and charges payable under the Loan Documents when due, thereby breaching its contract with CES.

48. As a result of the failure to pay the sums due under the Loan Documents, CES has accelerated the account and is demanding payment in full.

**WHEREFORE**, Plaintiff CES respectfully requests this Court to enter its Final Judgment in favor of CES and against Defendant Farm Properties in the amount of $811,775.30, which includes the principle and current and past due interest and charges payable under the Loan Documents as of January 7, 2019, plus interest and charges payable under the Loan Documents, reasonable attorneys' fees, and costs and to grant such other and additional relief as this Court may deem just and equitable.

## COUNT III
### (RECOVERY ON GUARANTY)

49. CES incorporates paragraphs 1 through 48 of this pleading to Count III as if fully set forth herein.

50. This is an action to enforce the Guaranties against Guarantors.

51. As a result of the defaults by Farm Properties, the Guarantors are obligated to pay the amounts due and owing pursuant to the Guaranties.

52.     The Guarantors are indebted to CES for the principal amount of $809,311.60 and $2,463.70 in current and past due interest and charges payable under the Loan Documents as of January 7, 2019, plus interest and charges payable under the Loan Documents as shall continue to accrue at the applicable rate thereafter, plus court costs, expenses, and attorneys' fees.

53.     Despite demand, the Guarantors failed and refused to pay the total amount past due, as a direct and legal result of which CES has been damaged.

**WHEREFORE**, CES demands judgment jointly and severally against Defendants Eastern Shore, Holden's Creek, Hall & Sons LLC, Hall & Sons Company, Benny Hall and Karen Hall for damages in the amount of $811,775.30, which includes the principle and current and past due interest and charges payable under the Loan Documents as of January 7, 2019, plus interest and charges payable under the Loan Documents, reasonable attorneys' fees, and costs, accruing thereafter until the debt is paid in full, as provided in the Loan Documents, and to grant such other and additional relief as this Court may deem just and proper.

DATED: January 11, 2019.

        Respectfully submitted,

        CAPITAL EQUIPMENT SOLUTIONS, LLC

        By: __/s/ Andrew P. Selman_____
               Counsel

James C. Cosby (VSB No. 25992)
Andrew P. Selman (VSB No. 91060)
VANDEVENTER BLACK LLP
901 E. Byrd Street, Suite 1600
Richmond, VA 23219
Telephone: (804) 237-8800
Fax: (804) 237-8801
jcosby@vanblacklaw.com
aselman@vanblacklaw.com

*Counsel for Plaintiff Capital Equipment Solutions, LLC*